IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Edward Bowles, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Stake Center Locating, LLC,<br><br>Defendant. | ) | Civil Action No. 0:25-cv-13403-SAL<br><br>**FIRST AMENDED COMPLAINT**<br>**(FLSA Collective Action/Class Action under the S.C. Payment of Wages Act)**<br><br>**Jury Trial Requested** |

## INTRODUCTION

1. This is an action brought by Edward Bowles ("Named Plaintiff") on behalf of himself and all others similarly situated against Stake Center Locating, LLC ("Defendant" or "Stake").

2. Named Plaintiff brings his federal claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. § 201 *et seq*. Named Plaintiff seeks Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to inform other similarly situated employees of their rights under the FLSA.

3. Named Plaintiff brings his South Carolina claims against Defendant in order to recover unpaid compensation, treble damages, and attorneys' fees and costs pursuant to the South Carolina Payment of Wages Act ("SCPWA"), S.C. CODE ANN. §§ 41-10-10, *et. seq.* These claims are proposed as opt-out class claims under Rule 23 of the Federal Rules of Civil Procedure.

4. Named Plaintiff and those similarly situated (hereafter, "Putative Plaintiffs") are current and former employees of Defendant who did not receive one and a half (1 ½) times their

regular rate for all hours worked over forty (40) in a workweek or otherwise were not paid for all hours worked.

5. Under the FLSA, during workweeks when the Named Plaintiff and the Putative Plaintiffs worked more than forty (40) hours, Defendant was required to pay for all hours Named Plaintiff and the Putative Plaintiffs worked and pay them 150% of their regular rate for all hours worked over forty (40) in a workweek. Additionally, under the SCPWA, Defendant was required to pay for all hours Named Plaintiff and the Putative Plaintiffs worked, including during workweeks when they worked less than forty (40) hours per workweek. By willfully failing to compensate Named Plaintiff and the Putative Plaintiffs who performed pre-shift, meal break, and post-shift work, Defendant violated the FLSA and SCPWA.

6. Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the South Carolina state law claims are asserted as a class action under Federal Rule of Civil Procedure 23.

7. The original Complaint was filed on November 14, 2025. (ECF No. 1).

**JURISDICTION AND VENUE**

7. This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under the FLSA, 29 U.S.C. §§201–19.

8. This Court has supplemental jurisdiction over Named Plaintiff and the Putative Plaintiffs' South Carolina state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiff's claims under the FLSA that they form part of the same controversy.

9. This Court has personal jurisdiction over Defendant because it operates within this District and Division.

10. Venue in the Rock Hill District of South Carolina is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## THE PARTIES

11. Edward Bowles ("Named Plaintiff") is an adult resident of Hickory Grove, South Carolina residing at 4044 Peachtree Street, Hickory Grove, SC 29717. Named Plaintiff was employed by Defendant as an hourly non-exempt Fiber Locator Technician ("Utility Locator") from May 2024 through May 2025. His consent form was filed on November 14, 2025. (ECF No. 1-1).

12. The Putative Plaintiffs are all non-exempt employees employed by Defendant within three (3) years preceding the commencement of this action who were not paid overtime at a rate of 150% their respective regular rates for all hours worked over forty (40) in a workweek.

13. Defendant Stake Center Locating, LLC is a foreign limited liability company registered to do business in the state of South Carolina. Process may be served upon its Registered Agent: Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

## FACTUAL ALLEGATIONS

14. During all times material to this Complaint, Defendant was an employer within the meaning of the FLSA and pursuant to S.C. CODE ANN. §§ 41-10-10(1).

15. During all times material to this Complaint, Defendant employed Named Plaintiff and the Putative Plaintiffs within the meaning of the FLSA and the South Carolina Payment of Wages Act.

15. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of

the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

16. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs were Defendant's employees pursuant to the SCPWA and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

17. During all times material to this Complaint, Defendant hired and continued to employ Named Plaintiff and the Putative Plaintiffs.

18. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs were classified as non-exempt and paid at an hourly rate, and thus were entitled to be paid at least 150% of their regular rate for all hours worked over forty (40) in a workweek.

19. Defendant is a utility locating company[1] that provides "complete coverage in all 48 contiguous states," including South Carolina.[2]

20. Defendant is the third largest locating company in the United States.[3]

21. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs regularly worked beyond forty (40) hours in a workweek.

---

[1] *Stake Center*, https://www.stakecenter.com/ (last visited Sept. 17, 2025).

[2] *Service Areas*, https://www.stakecenter.com/service-areas/ (last visited Sept. 17, 2025).

[3] *See* Complaint at 2, *Wolfe v. Stake Center Locating*, No. 230402591, Ct. Com. Pl., Phila. Cnty., Apr. 25, 2023.

22. As an Hourly Utility Locator, Named Plaintiff's job was to locate underground utilities; troubleshoot; mark the ground using paint and flags; document utility damage, if a Lead Fiber Locator Technician and Area Manager were unavailable; and promote damage prevention.[4]

23. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs have been employed by Defendant as Utility Locators, with their primary job duties being to locate utilities underground, mark the ground using paint and flags, and document any damage.

24. During all times material to this Complaint, Defendant recorded Named Plaintiff and the Putative Plaintiffs' hours worked using the software system UtiliSphere.

25. During all times material to this Complaint, Defendant closely monitored the work of Named Plaintiff and the Putative Plaintiffs to balance productivity versus cost. To accomplish this, Defendant assigned and tracked work assignments through a software program known as UtiliSphere. Work assignments were referred to as "tickets." A ticket tracked the location of the work site, the type of work that needed to be performed, and the number of "members" (utility providers) associated with each work site.

26. As part of their employment, Defendant's Utility Locators are required to service a certain number of members per hour ("MPH"). Each Utility Locator's productivity is tracked using a "budget" and each Utility Locator's target budget varies depending on their assigned work location and Defendant's needs. Each Utility Locator receives regular e-mails that track their MPH and explain how it relates to their target budget. The goal of this e-mail is to encourage each Utility Locator to meet or exceed their budget.

---

[4] Locate Technician – Columbia, SC, stakecenterlocating.com, https://stakecenterlocating.hrmdirect.com/employment/job-opening.php?req=3446749&req_loc=868411&&cust_sort1=247313#job)

27. If a Utility Locator location did not meet their budget, they could be subject to discipline, up to termination. For example, there were a few occasions during which Named Plaintiff did not meet his MPH budget. When this happened, his supervisor called him and sent him home after he had worked eight (8) hours. He was told that he would not receive any overtime that day.

28. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs could be assigned to one of two shifts during their workday: Day Shift or the On Call Shift. The assigned shifts varied and were not exclusive—Named Plaintiff and the Putative Plaintiffs typically worked at least one of each shift during their employment.

***On Call Shift***

29. Defendant scheduled Named Plaintiff and the Putative Plaintiffs to be available to work from 5:00 p.m. until 7:00 a.m. when they were scheduled for the On Call Shift. Although Named Plaintiff and the Putative Plaintiffs were required to be available for work from 5:00 p.m. until 7:00 a.m., pursuant to Defendant's companywide policy they were not on-the-clock or otherwise paid.

30. During the On Call Shift, Defendant's companywide policy required Named Plaintiff and the Putative Plaintiffs to keep their work phone on and with them. If Named Plaintiff and the Putative Plaintiffs received a call on their work phone, Defendant required them to answer the automated call and go through the prompts to accept the work assignment. Then, Defendant required Named Plaintiff and the Putative Plaintiffs to turn on their work computer; log into UtiliSphere; sync UtiliSphere; find the ticket at issue; review the ticket to identify the problem, and the site location; and accept the ticket—all while off-the-clock and unpaid.

31. Once the Named Plaintiff and the Putative Plaintiffs accepted the ticket, they would load into their work vehicle, clock in, and drive to the site to address the issue.

32. Defendant's companywide policy required Named Plaintiff and the Putative Plaintiffs to respond to emergency tickets within two (2) hours.

33. Once they received an emergency ticket, Named Plaintiff and the Putative Plaintiffs were required to either accept the ticket, or if they were already responding to another ticket and thus unavailable, to contact the contractor who initiated the ticket and resolve the conflict.

34. Named Plaintiff and the Putative Plaintiffs would then clock out after they returned home and exited their work vehicle. Pursuant to Defendant's companywide policy Named Plaintiff and the Putative Plaintiffs were then required to continue to monitor their phones and respond to additional calls until their shift ended at 7:00 a.m.

35. Hours worked by a Utility Locator during the On Call Shift were paid at a higher hourly rate of one and one half times the Utility Locator's Day Shift rate.

***Day Shift***
***Unpaid Pre-Shift Work***

36. During all times material to this Complaint, Utility Locators assigned to the Day Shift were scheduled to work from 7:00 a.m. to 5:00 p.m.

37. Defendant required Named Plaintiff and the Putative Plaintiffs to clock in after arriving at the first worksite and to arrive at the worksite by 7:00 a.m.

38. Before arriving at their first worksite of the day, Named Plaintiff and the Putative Plaintiffs needed to prepare for the day. In order to prepare, Named Plaintiff and the Putative Plaintiffs had to log into UtiliSphere; check if there were any outstanding Emergency Tickets that needed to be addressed; reserve their first work ticket for the day; screen tickets to identify their first work ticket for the day; handle calls with clients or contractors; respond to e-mails; plan their

work day; perform a vehicle inspection; load supplies and equipment into their work truck; and drive to the first worksite.

39. Defendant's companywide policy prohibiting Named Plaintiff and the Putative Plaintiffs from clocking in until they arrived at their first worksite of the day meant that the time Named Plaintiff and the Putative Plaintiffs spent working before and during the travel to their first worksite had to be performed off-the-clock. Named Plaintiff and the Putative Plaintiffs were not paid for the time they spent working before and during the time they spent traveling to their first worksite.

***Unpaid Post-Shift Work***

40. Pursuant to Defendant's companywide policy Named Plaintiff and the Putative Plaintiffs were required to keep their work phones on and respond to calls until 5:00 p.m., even though they had typically already finished their last job of the day and clocked out.

41. Pursuant to Defendant's companywide policy Named Plaintiff and the Putative Plaintiffs were required to clock out at their final worksite of the day.

42. In order to keep up with their workload, Named Plaintiff and the Putative Plaintiffs had to complete post-shift work, such as answering emails, client calls, unloading supplies from their work vehicle, and a post route vehicle inspection all while off-the-clock and unpaid.

43. Although Defendant knew Named Plaintiff and the Putative Plaintiffs had to complete this work at the end of their shift, and could only complete it after returning home, it was Defendant's companywide policy to not permit Named Plaintiff and the Putative Plaintiffs to remain clocked in for this work time. Named Plaintiff and the Putative Plaintiffs were not compensated for the work they performed at the end of their shift.

44. During the slower months (which occur in the winter), Defendant notified Named Plaintiff and the Putative Plaintiffs that there was a mandatory eight (8) hour cap on the number

of hours they were going to be paid. Even with this compensation cap in place, Defendant still expected Named Plaintiff and the Putative Plaintiffs to work from 7:00 a.m. until 5:00 p.m.

***Unpaid Meal Breaks***

45. Pursuant to Defendant's companywide policy, Named Plaintiff and the Putative Plaintiffs were required to clock out for thirty (30) minutes for a meal break each day, regardless of whether they actually received an undisturbed thirty (30) minute break each day.

46. Due to Defendant's strict MPH requirements, Named Plaintiff and the Putative Plaintiffs were required to work continuously throughout their workday in order to meet their ticket quota.

47. Failure to meet their MPH requirements could result in the Named Plaintiff and the Putative Plaintiffs being disciplined, which could include termination.

48. Although Named Plaintiff and the Putative Plaintiffs could not take an undisturbed thirty (30) minute break and meet their MPH requirements, Defendant continued to require Named Plaintiff and the Putative Plaintiffs to clock out for thirty (30) minutes each day.

49. Should the Named Plaintiff and the Putative Plaintiffs fail to record a thirty (30) minute meal break each workday, they could also be disciplined.

50. After being hired, Named Plaintiff did not take a thirty (30) minute meal break due to his busy shift and therefore did not record a meal break in his time records. Because Named Plaintiff did not record a meal break in his time records, his direct supervisor disciplined him and informed him that he always had to record taking a thirty (30) minute meal break.

51. During this conversation and in subsequent conversations, Named Plaintiff's supervisor told him that he had to work through his thirty (30) minute break. Named Plaintiff continued to work without taking his thirty (30) minute meal break but, made sure to clock out for thirty (30) minutes every day.

52. The effect of Defendant's policies are such that the only way to not be disciplined is to work throughout their shift without stopping—in order to meet the MPH requirements—and to deduct thirty (30) minutes from their own pay for a meal break they did not take—in order to avoid discipline for not recording one.

53. During all times material to this Complaint and upon information and belief, Defendant was aware that Named Plaintiff and the Putative Plaintiffs often worked through their meal periods without pay and permitted this to occur.

54. During all times material to this Complaint, Defendant did not have a formal process or mechanism for Named Plaintiff and the Putative Plaintiffs to report time worked outside of when they were permitted to clock in pursuant to Defendant's companywide policies; however, Defendant did record the work performed off-the-clock on the UtiliSphere program and by tracking the driving time.

***Defendant's Violation of the FLSA and SCPWA was Willful***

55. Further, Defendant failed to pay Named Plaintiff and the Putative Plaintiffs overtime wages at a rate of time and one half (1 ½) their regular rate of pay.

56. Defendant maintained policies that resulted in employees being paid only for their scheduled shifts—even if they worked more than that—or, if assigned to the On Call shift, employees only being paid for the time when on their way to the emergency ticket—and not for the time handling the call or prep work that needed to be done before traveling to the ticket. These policies deliberately exclude from compensation the hours employees actually worked outside their scheduled shifts or while preparing to respond to an emergency ticket while On Call even though Defendant knew that employees routinely performed such work.

57. Defendant's policies also required Named Plaintiff and the Putative Plaintiffs to perform work during their unpaid meal breaks.

58. During all times material to this Complaint, much of the off-the-clock work performed by the Named Plaintiff and the Putative Plaintiffs qualified as overtime hours.

59. During all times material to this Complaint, Defendant's failure to pay Named Plaintiff and the Putative Plaintiffs for all hours worked over forty (40) at one-and one-half (1 ½) times their proper regular rates was a violation of the FLSA. During workweeks when Named Plaintiff and the Putative Plaintiffs worked less than forty (40) hours in a workweek, Defendant's failure to pay them for all hours worked was a violation of the SCPWA.

60. During all times material to this Complaint, Defendant knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Named Plaintiff and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a work week at an amount equal to 150% of their regular rate.

61. During all times material to this Complaint, Defendant's pay practice of not paying Named Plaintiff and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a workweek at an amount equal to 150% of their regular rate, was willful and not in good faith within the meaning of 29 U.S.C. § 255(a).

62. During all times material to this Complaint, and upon information and belief, Defendant willfully carried out their illegal scheme. This is evidenced by Defendant's previous lawsuits: *Chao v. Stake Center Locating*, No. 3:07-cv-1833 (Oregon July 22, 2008) and *Walker v. Stake Center Locating*, No. 2:21-cv-00183 (C.D. Utah Oct. 21, 2022). Since the dismissal of both matters, Defendant implemented additional illegal practices and policies which has caused further violations of state and federal law.

63. The unpaid wages to which Named Plaintiff and the Putative Plaintiffs are entitled have remained unpaid beyond their regular pay day for the period in which their workweek ends, in violation of the FLSA. 29 C.F.R. § 778.106.

64. The unpaid wages to which Named Plaintiff and the Putative Plaintiffs are entitled to have remained unpaid for more than thirty (30) days in violation of S.C. CODE ANN. §§ 41-10-30 and 41-10-50(1).

**COLLECTIVE ACTION ALLEGATIONS AND COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b) ALLEGING FLSA VIOLATIONS**

65. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

66. Named Plaintiff requests that the Court issue Court Supervised Notice to the following group of current and former employees defined as:

> **All current and former Hourly Utility Locators who worked for Stake Center Locating, LLC in South Carolina, at any time within the three (3) years preceding the commencement of this action through the present ("Employees Entitled to Notice").**

67. Named Plaintiff reserves the right to amend and refine the definition of the Employees Entitled to Notice they seek to have the Court serve based upon further investigation and discovery.

68. The precise size and identity of the proposed Employees Entitled to Notice should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

69. Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because there exists at least a strong likelihood that they are similarly situated to the Named Plaintiff.

70. Sending Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because they have been subjected to single companywide policies and common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether

Defendant satisfied the FLSA's requirements for paying them at a rate not less than one and one-half (1 ½) their regular rate of pay for all hours worked in excess of forty (40) hours each workweek.

71. Named Plaintiff and the Employees Entitled to Notice, having willfully been not paid their entitled compensation for work they performed pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

72. The Named Plaintiff and the Employees Entitled to Notice have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned FLSA compliant wages.

73. Named Plaintiff seeks to have the Court send supervised notice pursuant to 29 U.S.C. § 216(b), as defined above, to the proposed group of similarly situated current and former employees, i.e., Employees Entitled to Notice.

74. Named Plaintiff is similarly situated to the Employees Entitled to Notice and will prosecute this action vigorously on their behalf.

75. Named Plaintiff intends to send notice to all the Employees Entitled to Notice pursuant to Section 216(b) of the FLSA. The names and addresses of the Employees Entitled to Notice are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by any means permissible under the FLSA.

76. Named Plaintiff and the Employees Entitled to Notice have been similarly damaged by Defendant's willful refusal to pay minimum wages for all hours worked, including failing to

pay 150% of Named Plaintiff and the Employees Entitled to Notice's regular rate for all hours worked beyond forty (40) in a workweek.

77. As a result of Defendant's FLSA violations, Named Plaintiff and the Employees Entitled to Notice are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

78. Any alleged defenses Defendant may raise will be common to the Named Plaintiff and the Employees Entitled to Notice.

**SOUTH CAROLINA CLASS ACTION ALLEGATIONS**

79. Plaintiff brings the Second Cause of Action, the South Carolina Payment of Wage Act ("SCPWA") claims, as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated current and former workers employed by Defendant at any time within three (3) years prior to the commencement of this lawsuit, who were not paid for *all* hours worked at their agreed upon hourly rate or had any compensation withheld, diverted, or deducted without written or legal authorization ("SC Rule 23 Class" or "SC Class Members").

80. Upon information and belief, this action satisfies the requirements of Rule 23(a) Fed. R. Civ. P., as alleged in the following particulars:

a. The proposed Plaintiff class is so numerous that joinder of all individual members in this action is impracticable, and the disposition of their claims as a class will benefit the parties and the Court;

b. There are questions of law and/or facts common to the members of the proposed Plaintiff class;

c. The claims of Plaintiff, the representative of the proposed Plaintiff class, are typical of the claims of the proposed Plaintiff class; and

d. Plaintiff, the representative of the proposed Plaintiff class, will fairly and adequately protect the interests of the class.

81. In addition, upon information and belief, this action satisfies one or more of the requirements of Rule 23(b) Fed. R. Civ. P., because the questions of law and/or fact common to the members of the proposed Plaintiff class predominate over any questions affecting only individual members.

82. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual SC Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual SC Rule 23 Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual SC Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual SC Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in impairment of the SC Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of

common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

83. Upon information and belief, Defendant and other employers throughout the State of South Carolina violate the SCPWA. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

84. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

**FIRST CAUSE OF ACTION**
**(Violation of the Fair Labor Standards Act)**

85. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

86. During the time period beginning approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer of Named Plaintiff and Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(d).

87. During the time period from approximately three (3) years preceding the commencement of this action to the present, Named Plaintiff and the Employees Entitled to Notice were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

88. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Named Plaintiff and the Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(g).

89. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

90. During all times material to this Complaint, Named Plaintiff and the Employees Entitled to Notice have not been exempt from receiving overtime benefits under the FLSA because, inter alia, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.0, *et seq*.

91. At all times material to this Complaint, Defendant regularly employed Named Plaintiff and the Employees Entitled to Notice to work more than forty (40) hours in a workweek.

92. Defendant violated federal law because it knew or should have known that Named Plaintiff and the Employees Entitled to Notice should have been paid overtime at a rate not less than time and one-half their regular rate of pay for all hours worked over forty (40) in a workweek, including work performed off-the-clock.

93. Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Named Plaintiff and the Employees Entitled to Notice at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

94. Named Plaintiff and the Employees Entitled to Notice should have been paid 150% of their regular rate for all hours worked beyond forty (40) in a workweek during the three years from the filing date of the Complaint or when they join this lawsuit.

95. Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continuing to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

96. Named Plaintiff and the Employees Entitled to Notice are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other

remedies available as compensation for Defendant's violations of FLSA, by which the Named Plaintiff and the Employees Entitled to Notice have suffered and continue to suffer damages.

**SECOND CAUSE OF ACTION**
**(Violation of the South Carolina Payment of Wages Act)**

97. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

98. At all times material to this Complaint, Defendant has been an "employer" as defined by the SCPWA, S.C. CODE ANN. § 41-10-10(1).

99. At all times material to this Complaint, Named Plaintiff and the SC Class Members were "employed" by Defendants as defined within the SCPWA. S.C. CODE ANN. §§ 41-10-10–110.

100. At all times material to this Complaint, Named Plaintiff and the SC Class Members were "employees" within the meaning of the SCPWA and are not free from the control and direction of Defendant.

101. During the course of their employment, Defendant agreed to pay Named Plaintiff and SC Class Members "wages," as defined in the SCPWA, to compensate Named Plaintiff and SC Class Members for labor rendered to Defendants. S.C. CODE ANN. § 41-10-10(2).

102. Named Plaintiff and the SC Class Members accepted Defendant's offer.

103. The SCPWA requires employers like Defendant to "notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment" and the "employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period." S.C. CODE ANN. § 41-10-40(C).

104. The SCPWA also prohibits employers like Defendant from "withhold[ing] or divert[ing] any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law." S.C. CODE ANN. §§ 41-10-40(C).

105. Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective." S.C. CODE ANN. §§ 41-10-30(A).

106. In violation of the SCPWA, Defendant willfully failed to pay Named Plaintiff and the SC Class Members all compensation for "wages" due and owing to them, in violation of the SCPWA. S.C. CODE ANN. §§ 41-10-10(2).

107. Defendant also failed to provide them with compliant wage statements for each of their pay periods as required by law because the notice and wage statements provided to employees did not include hours worked off the clock due to Defendant's companywide policies and procedures.

108. Additionally, Defendant failed to provide Named Plaintiff and the SC Class Members with at least seven days' advance written notice of the deductions or the amounts of the deductions that it made to their paychecks.

109. Defendant withheld wages of Named Plaintiff and the SC Class Members without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

110. The SCPWA allows for recovery of such unpaid gap time wages during workweeks in which Named Plaintiff and the SC Class Members did not work more than forty (40) hours during the workweek.

111. In violating the SCPWA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable South Carolina law.

112. As a direct and proximate result of Defendant's willful conduct, Named Plaintiff and the SC Class Members have suffered substantial losses and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to the SCPWA. S.C. CODE ANN. § 41-10-80.

113. Defendant is in possession and control of necessary documents and information which Named Plaintiff could use to calculate damages.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, on behalf of himself and the Putative Plaintiffs, pray that this Court enter the following relief:

A. For an Order sending Court Supervised Notice to the FLSA Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

B. Designating Named Plaintiff as the representative for the FLSA Employees Entitled to Notice and designating counsel of record as Class Counsel;

C. Issuing proper notice to the FLSA Employees Entitled to Notice;

D. Unpaid wages, including overtime wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Named Plaintiff and the FLSA Employees Entitled to Notice;

E. Certifying the SC Rule 23 Class and designating the Named Plaintiff as the Class Representative of the SC Rule 23 Class.

F. Awarding Named Plaintiff and the SC Class Members damages for unpaid wages and all other damages allowed by South Carolina state law including treble damages;

G. Awarding the costs of this action, including attorney's fees;

H. Awarding service awards as permitted by law;

I. Awarding pre-judgment and post-judgment interest;

J. A declaratory judgment finding that the practice complained of herein is unlawful under the FLSA and South Carolina state law; and

K. Any other relief to which the Named Plaintiff and Employees Entitled to Notice may be entitled.

Respectfully submitted,

*/s/ J. Scott Falls*

J. Scott Falls (Federal ID No. 10300)
scott@falls-legal.com
Ashley L Falls (Federal ID No. 12083)
ashley@falls-legal.com
FALLS LEGAL, LLC
125-E Wappoo Creek Drive, Suite 102
Charleston, SC 29412
Telephone: (843) 737-6040
Fax: (843) 737-6140

Robert E. DeRose* (OH Bar No. 0055214)
bderose@barkanmeizlish.com
Nickole K. Iula* (OH Bar. No. 0099895)
niula@barkanmeizlish.com
Anna R. Caplan* (OH Bar No. 0104562)
acaplan@barkanmeizlish.com
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300

Clif Alexander* (Texas Bar No. 24064805)
clif@a2xlaw.com
Austin W. Anderson* (Texas Bar No. 24045189)
austin@a2xlaw.com
Carter T. Hastings* (Texas Bar No. 24101879)
carter@a2xlaw.com
ANDERSON ALEXANDER, PLLC
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

* *pro hac vice* application forthcoming
*Attorneys for Plaintiffs*

Charleston, South Carolina
November 24, 2025